IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LISA WARE, et al.,

                Plaintiffs,

v.                                               CIVIL ACTION NO. 2:24-cv-00722

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion to Dismiss. [ECF No. 12]. Plaintiffs Lisa and Frank Ware have filed a response in opposition, [ECF No. 16], to which Defendant replied, [ECF No. 17]. The matter is now ripe for review.

**I.    BACKGROUND**

This action arises from a motor vehicle accident on December 23, 2023, in Parkersburg, West Virginia. [ECF No. 11]. Plaintiffs allege that State Farm wrongfully refused to provide underinsured motorist ("UIM") coverage following the accident. *Id.* ¶¶ 9–11. According to the Amended Complaint, the accident occurred when another driver, Anthony Angerame, failed to stop at a red light and struck Plaintiffs' vehicle, causing significant damage. *Id.* ¶¶ 6–7. Plaintiffs' vehicle was totaled, and both sustained serious bodily injuries. *Id.* ¶ 8.

Before accepting a policy limits settlement from Mr. Angerame, Ms. Ware contacted State Farm, Plaintiffs' underinsured motorist carrier, to obtain its consent to settle. *Id.* ¶ 9. It was only

at this point that Plaintiffs were informed they had allegedly declined UIM coverage—contrary to their expectations and prior insurance history with State Farm. *Id.* ¶ 10.

Plaintiffs assert that their policy was purchased through the Steve Westfall Insurance Agency ("Westfall Agency"), an authorized agent of State Farm. *Id.* ¶ 14. State Farm produced a UIM waiver form dated January 6, 2023, bearing what purported to be Lisa Ware's signature. *Id.* ¶¶ 12–13. Plaintiffs allege the signature is fraudulent. *Id.* According to the Amended Complaint, Plaintiffs submitted the form, along with known exemplars of Ms. Ware's signature, to a forensic handwriting expert who concluded that the signature on the waiver form was not hers. *Id.* ¶ 19. Plaintiffs further allege that State Farm "conspired or otherwise kn[ew] that an employee or agent wrongfully or inadvertently signed Plaintiff Lisa Ware's signature on the decline of coverage form."[1] *Id.* ¶ 17.

On December 13, 2024, State Farm removed this matter from the Circuit Court of Wood County, West Virginia, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. [ECF No. 1, at 2–3]. On January 30, 2025, I directed the Plaintiffs to file an amended complaint in compliance with Federal Rule of Civil Procedure 10. [ECF No. 10]. Plaintiffs filed their Amended Complaint for Damages on February 6, 2025, asserting three claims: Count I – Negligence and Underinsured Motorist Coverage, Count II – Breach of Contract, and Count III – Fraud. [ECF No. 11].

On February 20, 2025, State Farm filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. [ECF No. 12]. In support of its motion, State Farm argues: (1) Plaintiffs failed to state a claim for either common law or statutory bad faith, (2) Plaintiffs' fraud claim is barred by the gist of the action doctrine,

---

[1] Notably, Plaintiffs assert that the Westfall Agency employs an agent/employee who is also named Lisa. [ECF No. 11, ¶ 16].

2

and (3) Plaintiffs failed to plead their fraud claim with the particularity required under Federal Rule of Civil Procedure 9(b). [ECF No. 13].

## II. LEGAL STANDARD

### A. Motion to Dismiss under 12(b)(6)

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In resolving a motion to dismiss under Rule 12, the court may not consider "matters outside the pleadings," Fed. R. Civ. P. 12(d). Specifically, the court considers only those "documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

Generally, a pleading under the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440). These factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765

(4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Id.*

### B.    Rule 9(b) Particularity Pleading Standard

"In addition to meeting the plausibility standard of *Iqbal*, fraud claims . . . must be pleaded with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–85 (4th Cir.1999)). To meet this standard, plaintiffs should "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison*, 176 F.3d at 784 (internal quotations omitted)). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* at 379 (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)).

A lack of compliance with Rule 9(b)'s particularity standard is treated in this circuit as a failure to state a claim under Fed. R. Civ. P. 12(b)(6). *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022). While the Fourth Circuit requires "significant detail" in fraud claims, it nonetheless states that courts should "hesitate to dismiss a complaint under Rule 9(b)" if they are "satisfied '(1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" *United States ex rel. Nicholson v. Medcom Carolinas, Inc.*, 42 F.4th 185, 195 (4th Cir. 2022) (quoting *Harrison*, 176 F.3d at 784, 789).

### III. DISCUSSION

#### A. Count II – Breach of Contract

State Farm moves to dismiss Count II of the Amended Complaint, arguing that "Plaintiffs fail to state a claim for breach of contract or 'bad faith,' because Plaintiffs failed to sufficiently allege any misconduct or wrongful claims handling activities on the part of State Farm." [ECF No. 13, at 1].

##### 1. Breach of Contract

Under West Virginia law, a claim for breach of contract requires the plaintiff to plead (1) the existence of a valid, enforceable contract, (2) a breach of the terms of that contract, and (3) resulting damages. *Sneberger v. Morrison*, 235 W. Va. 654, 669, 776 S.E.2d 156, 171 (2015) (citing Syl. Pt. 1, *State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 759 S.E.2d 795 (2014)). Here, Plaintiffs allege that (1) they maintained an active insurance policy with State Farm that included UIM coverage[2] and were current on their premium payments at the time of the subject accident, (2) State Farm breached its contractual obligation by failing to pay damages that exceeded the limits of Mr. Angerame's liability insurance, and (3) Plaintiffs suffered damages as a direct result of State Farm's breach. [ECF No. 11, ¶¶ 9–12, 14, 20–22, 29, 33–34].

Accepting these allegations as true and drawing all reasonable inferences in favor of Plaintiffs, as I must at this stage, I find Plaintiffs have plausibly stated a claim for breach of contract. I turn now to whether Plaintiffs have also sufficiently alleged a related claim for common law bad faith.

---

[2] West Virginia Code § 33-6-31 requires insurers to offer uninsured and underinsured motorist coverage in every automobile liability policy issued in the state. "If the 'insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured' the optional coverage 'is included in the policy by operation of law.'" *Lydick v. Erie Ins. Prop. & Cas. Co.*, 358 F. Supp. 3d 552, 559 (S.D. W. Va. Jan. 14, 2019) (Johnston, J.) (quoting *Thomas v. McDermitt*, 232 W. Va. 159, 164, 751 S.E.2d 264, 269 (2013)); *see also Erie Ins. Prop. & Cas. Co. v. Cooper*, 251 W. Va. 574, 578, 915 S.E.2d 352, 356 (2025).

## 2. Common Law Bad Faith

In West Virginia, "an insured has a right to bring a first-party common law or statutory bad faith action against its insurer." *State ex. Rel. State Auto Prop. Ins. Cos. v. Stucky*, 239 W. Va. 729, 734, 806 S.E.2d 160, 165 (2016). Such actions are defined as claims "wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured." *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W. Va. 358, 369, 508 S.E.2d 75, 86 (1998). Common law bad faith claims are predicated on an underlying contractual breach, and the insured must substantially prevail on the contract claim before pursuing bad faith. *Jordache Enters., Inc. v. Nat'l Union Fire Ins. Co.*, 204 W. Va. 465, 484, 513 S.E.2d 692, 711–12 (1998).

At first glance, it might appear that dismissal of Plaintiffs' common law bad faith claim is warranted because the merits of the underlying breach of contract claim have yet to be resolved. However, breach of contract and common law bad faith claims are typically litigated in tandem.[3] If the court or jury ultimately find that no breach of contract occurred, Plaintiffs' common law bad faith claim becomes moot. Conversely, if a breach is found, the factfinder may then consider whether the defendant committed bad faith.[4] Therefore, in light of my finding that Plaintiffs have

---

[3] *GMC Real Est., LLC v. AmGUARD Ins. Co.*, 683 F. Supp. 3d 541, 547 (S.D. W. Va. 2023) (Goodwin, J.) (finding neither party was entitled to summary judgment on a common law bad faith claim where the breach of contract claim must be submitted to the jury); *Mounts v. Stonebridge Life Ins. Co.*, No. CV 2:08-301, 2008 WL 11378837, at *7 (S.D. W. Va. Nov. 26, 2008) (Copenhaver, J.) ("Thus, as plaintiff still has the potential to 'substantially prevail' on her breach of contract claim, . . . her claim [for bad faith] is timely."); *Abraham Linc Corp. v. Spinnaker Ins. Co.*, No. 1:23-CV-98, 2024 WL 3433661, at *9 (N.D. W. Va. July 16, 2024) (Kleeh, J.) ("Accordingly, dismissal of the common law bad faith claim . . . would be premature because Plaintiff adequately pled breach of contract. Thus, Defendants' Motion as to the common law bad faith claim is **DENIED** because it remains possible for Plaintiff to substantially prevail on its . . . breach of contract claim."); *Clendenin v. Wells Fargo Bank*, No. 2:09-cv-00557, 2009 WL 4263506, *5 (S.D. W. Va. Nov. 24, 2009) (Goodwin, J.) ("Because West Virginia does not permit a stand-alone claim for a breach of the covenant of good faith and fair dealing, [a common law bad faith claim] will live or die by the breach-of-contract claim . . . .").

[4] Naturally, bifurcation or trifurcation of the case may be considered closer to trial. *GMC Real Est., LLC v. AmGUARD Ins. Co.,* No. 2:21-CV-00151, 2023 WL 5154528, at *2 (S.D. W. Va. Aug. 10, 2023) (Goodwin, J.) ("In this case, the court concludes that it would promote judicial economy and would not prejudice [the plaintiff] to bifurcate the bad

adequately stated a claim for breach of contract, dismissal of Plaintiffs' bad faith claims at this stage based solely on the unresolved status of their breach of contract claim would be premature.

To prevail on a claim of bad faith, an insured plaintiff must establish that (1) "the insurer had a duty to settle . . . on a claim for which the insured was legally entitled to recover," (2) "the insurer declined to settle," (3) "the insured was required to sue," and (4) the insured "substantially prevailed" on the underlying contract action. *Jordache Enters., Inc.*, 513 S.E.2d at 712 (quoting *Marshall v. Saseen*, 450 S.E.2d 791, 797 (W. Va. 1994)).

Here, Plaintiffs allege that State Farm acted in bad faith by using a forged waiver of UIM coverage to deny benefits to which Plaintiffs were legally entitled. [ECF No. 11, ¶ 31]. According to the Amended Complaint, State Farm either "conspired or otherwise [knew] that an employee or agent wrongfully or inadvertently signed Plaintiff Lisa Ware's signature on the decline of coverage form[,]" without Plaintiffs' knowledge. *Id.* ¶¶ 10–11, 17, 22. Plaintiffs further allege that, absent the forged waiver, State Farm would have been obligated to provide UIM benefits for which Plaintiffs paid premiums. *Id.* ¶¶ 20, 30–31. Plaintiffs also claim that "State Farm failed to abide by its own best practices in adjusting Plaintiffs' underinsured motorist claim." *Id.* ¶ 33. Having filed suit, Plaintiffs' ability to "substantially prevail" on their breach of contract claim will be determined as the case progresses. Accepting these allegations as true and drawing all reasonable inferences in Plaintiffs' favor, I find these facts sufficient to support a plausible claim for common law bad faith.

---

faith claims from the breach of contract claim. Therefore, depending on the outcome of phase one of the trial, phase two of the trial shall address whether [the defendant] committed common law bad faith and/or violated the UTPA."); *Arch Specialty Ins. Co. v. Go-Mart, Inc.*, No. CIV.A. 2:08-0285, 2009 WL 2244772, at *3 (S.D. W. Va. July 24, 2009) (Copenhaver, J.) ("Bifurcation and a stay of the bad faith and UTPA claims would promote judicial economy because resolution of these claims turns on whether the court finds that [the defendant] violated the terms of one of the insurance policies. [The parties] do not disagree that the bad faith and UTPA claims should be addressed last.").

State Farm, however, argues that Plaintiffs' common law bad faith claim should be dismissed because "the allegation that [Plaintiffs] were not informed about UIM coverage pertains to the question of whether they signed the form rejecting that coverage prior to when any claim for UIM benefits was ripe, and not to any handling of the UIM coverage claim." [ECF No. 13, at 5]. State Farm further contends that Plaintiffs failed to allege how its conduct deviated from its "own best practices for adjusting claims." *Id.* at 6. These arguments miss the mark. It is not unreasonable to infer that forging a waiver of coverage, or knowingly relying on a forged waiver, is inconsistent with State Farm's best practices. More importantly, State Farm's position mischaracterizes both the nature of Plaintiffs' allegations and the scope of an insurer's duty to act in good faith. Plaintiffs do not merely allege that they were uninformed about UIM coverage. They allege that State Farm denied their claim based on a waiver that was forged, and that State Farm either knew or should have known the waiver was invalid. The use of a fraudulently executed document to deny coverage is not separate from the claim-handling process—it is the claim-handling process. Accordingly, State Farm's motion to dismiss Plaintiff's common law bad faith claim is **DENIED**.

### 3. Statutory Bad Faith

The West Virginia Unfair Trade Practices Act ("UTPA"), W. Va. Code § 33-11-1 *et seq.*, imposes statutory duties on insurers that exist independently of any contractual obligations. *Kenney v. Indep. Ord. of Foresters*, 744 F.3d 901, 903 (4th Cir. 2014); *Weese v. Nationwide Ins. Co.*, 879 F.2d 115, 120 (4th Cir. 1989). The Supreme Court of Appeals of West Virginia has long recognized that the UTPA "creates a positive duty . . . independent of any insurance contract[,] and a cause of action may be maintained based on the violation of the statutory duty." *Taylor v.*

*Nationwide Mut. Ins. Co.*, 214 W. Va. 324, 330, 589 S.E.2d 55, 61 (2003) (internal quotation marks omitted) (second alteration in original).

A UTPA claim based on unfair claim settlement practices under § 33-11-4(9) requires a plaintiff to plead and prove that the insurer engaged in such practices "with such frequency as to indicate a general business practice." *See Dodrill v. Nationwide Mut. Ins. Co.*, 201 W. Va. 1, 10–11, 491 S.E.2d 1, 10–11 (1996); *Holloman v. Nationwide Mut. Ins. Co.*, 217 W. Va. 269, 276, 617 S.E.2d 816, 823 (2005). A plaintiff cannot sustain a statutory bad faith claim under § 33-11-4(9) based on a single instance of alleged misconduct alone. Rather, the complaint must allege that the insurer's conduct arose from "a habit, custom, usage, or business policy . . . sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a general business practice." *Dodrill*, 201 W. Va. at 13, 491 S.E.2d at 13.

Here, Plaintiffs' Amended Complaint alleges that "Defendant has committed common law and statutory bad faith as they have violated W. Va. Code 33-11-1 et al., and has acted in a reckless disregard for whether such a claim existed." [ECF No. 11, ¶ 32]. Plaintiffs fail to specify which subsection of § 33-11-4 was allegedly violated, nor do they assert any facts suggesting that State Farm engaged in a *pattern* of wrongful conduct or that its actions were part of a general business practice. The sole factual basis offered is a single incident: the alleged forgery of Lisa Ware's signature on a UIM declination form and the denial of underinsured motorist coverage based on that form. *Id.* ¶¶ 11–13, 36.

This is insufficient under the governing legal standard. Plaintiffs do not allege that State Farm routinely forges waivers, misrepresents coverage, or engages in a pattern of fraudulent or deceptive claims handling practices. Without allegations that the conduct arose from a business-wide policy or practice, this isolated incident cannot support a claim under § 33-11-4(9). *See*

*Barefield v. DPIC Cos., Inc.*, 215 W. Va. 544, 550, 600 S.E.2d 256, 262 (2004) (requiring more than isolated conduct to support claim under subsection (9)).

Plaintiffs contend that W. Va. Code § 33-11-4(11), which prohibits misrepresentations in insurance applications, applies to State Farm's alleged conduct. [ECF No. 16, at 4]. Subsection (11), unlike § 33-11-4(9), does not require proof that the conduct occurred with such frequency as to constitute a general business practice. *See Mutafis v. Erie Ins. Exch.*, 174 W. Va. 660, 676, 328 S.E.2d 675, 691 (1985), *superseded by statute on other grounds*, W. Va. Code 55-7-29(a), *as recognized in Jordan v. Jenkins*, 245 W. Va. 532, 555 n.27, 859 S.E.2d 700, 723 n.27 (2021). The "general business practice" requirement appears only in subsection (9), and nothing in the statute or case law suggests that this requirement should be read into other provisions. Nonetheless, Plaintiffs do not cite or invoke this provision in the Amended Complaint, nor do they allege facts that would plausibly establish a violation of its terms. Plaintiffs' reliance on this provision in their response does not salvage their statutory bad faith claim.

Accordingly, because Plaintiffs' Amended Complaint neither identifies the subsection of the UTPA at issue nor alleges facts establishing a general business practice of violations as required under § 33-11-4(9), the statutory bad faith claim must be dismissed. State Farm's motion to dismiss Plaintiff's statutory bad faith claim is **GRANTED.**

### B. Count III – Fraud

To state a claim for fraud under West Virginia law, a plaintiff must allege "(1) that the act claimed to be fraudulent was the act of the defendant or induced by [the defendant]; (2) that it was material and false;" (3) that the plaintiff justifiably relied upon it; and (4) that the plaintiff was damaged because he relied upon it. Syl. Pt. 1, *Lengyel v. Lint*, 167 W. Va. 272, 276, 280 S.E.2d 66, 69 (1981). Fraud may arise from either an affirmative misrepresentation or a material omission.

*See Frazer v. Brewer*, 52 W. Va. 306, 310, 43 S.E. 110, 111 (1902) ("Fraud is the concealment of the truth, just as much as it is the utterance of a falsehood."). "Fraudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Trafalgar House Const., Inc. v. ZMM, Inc.*, 211 W. Va. 578, 584, 567 S.E.2d 294, 300 (2002).

### 1. Sufficiency Under Rule 9(b)

State Farm moves to dismiss Plaintiffs' fraud claim on the ground that "Plaintiffs cite no specific facts to clearly identify State Farm's role in any alleged fraud in the Amended Complaint." [ECF No. 13, at 5]. Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud," though conditions of a person's mind—such as knowledge or intent—may be alleged generally. Fed. R. Civ. P. 9(b).

Here, Plaintiffs have identified the relevant actors (State Farm and/or the Westfall Agency, and an employee named "Lisa"), the conduct at issue (forgery and concealment of an insurance form), the time and place of the act (January 6, 2023, in connection with the Westfall Agency), and its materiality (loss of UIM coverage). While Plaintiffs do not explicitly allege that they relied on the forged document, the Amended Complaint permits the reasonable inference that they believed they were properly insured, and, because State Farm concealed the existence and content of a key coverage-related document, Plaintiffs were induced to forgo any effort to confirm or obtain UIM coverage until after their accident. *See Pocahontas Mining Co. v. Oxy USA, Inc.*, 202 W. Va. 169, 175, 503 S.E.2d 258, 264 (1998) (Workman, J., concurring) ("Obviously, one who is defrauded in this manner [through fraudulent concealment] cannot possibly take any affirmative action to indicate reliance, since he knows nothing of the deception. Yet, it would be ludicrous to reward a fraudulent actor for his skill in perpetrating such a deception. That is not what the law on

fraud, and specifically on the element of detrimental reliance, envisions."). Such allegations are sufficient to support an inference of justifiable reliance and resulting harm.

Accordingly, the Court finds that Plaintiffs have sufficiently pleaded a claim for fraud.

### 2. Gist of the Action Doctrine

State Farm also argues that Plaintiffs' fraud claim is barred by the gist of the action doctrine, asserting that the alleged wrongdoing arises solely from the insurance contract. [ECF No. 13, at 7]. I disagree.

West Virginia's "gist of the action" doctrine prevents plaintiffs from recasting contract claims as torts. *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W. Va. 577, 586, 746 S.E.2d 568, 577 (2013). Under this doctrine, an action in tort cannot "arise for breach of contract unless the action in tort would arise independent of the existence of the contract." Syl. Pt. 9, *Lockhart v. Airco Heating & Cooling, Inc.*, 211 W. Va. 609, 611, 567 S.E.2d 619, 621 (2002). In other words, whether a tort and a breach of contract claim can coexist depends on "whether the parties' obligations are defined by the terms of the contract." *Soyoola v. Oceanus Ins. Co.*, 986 F. Supp. 2d 695, 707 (S.D. W. Va. 2013) (Goodwin, J.) (quoting *Gaddy Eng'g Co.*, 231 W. Va. at 586, 746 S.E.2d at 577). Under this doctrine, tort recovery will be barred so long as one of the following factors is demonstrated:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Tri-State Petroleum Corp. v. Coyne*, 240 W. Va. 542, 555, 814 S.E.2d 205, 218 (2018) (internal quotation marks omitted). Although a tort can "grow[ ] out of a contract," it must still "possess all of the essential elements of tort." *Lockhart*, 211 W. Va. at 614, 567 S.E.2d at 624 (citing 86 C.J.S.

Torts § 4 (1997)). Such tort claim may only be pursued where the alleged tortious conduct stems from the violation of an independent legal duty. Syl Pt. 9, *id.* at 611, 567 S.E.2d at 621 ("Tort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation.").

Here, Plaintiffs do not merely allege that State Farm failed to pay benefits owed under an insurance contract. Instead, they allege that State Farm fabricated, knowingly relied on, and concealed a forged waiver of UIM coverage to deny the existence of coverage altogether. [ECF No. 11, ¶¶ 11–13, 36]. While the validity of the waiver affects the terms of the insurance contract, the act of forging and concealing the waiver itself is extraneous to the contract and implicates a duty independent of State Farm's contractual obligations—namely, the duty to refrain from fraud and concealment in the formation or administration of coverage. State Farm's duty to offer UIM coverage is governed by statute, not contract. *See* W. Va. Code § 33-6-31.

According to the Amended Complaint, had Plaintiffs been informed of their right to UIM coverage, and had they not been misled by the forged waiver, they would have elected such coverage, consistent with their prior policies with State Farm. Accepting these allegations as true, the fraud claim does not depend on whether State Farm breached the contract, but rather whether it engaged in misconduct to avoid forming a lawful contract in the first place.

For these reasons, I find the gist of the action doctrine does not bar Plaintiffs' fraud claim. State Farm's Motion to Dismiss Count III is **DENIED.**

## IV. CONCLUSION

Accordingly, Defendant's Motion to Dismiss [ECF No. 12] is **GRANTED IN PART** and **DENIED IN PART**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: September 5, 2025

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE